UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD HANSEND,

       Petitioner,

                                  Case No. 1:10-cv-530
v.                                    Hon. Robert J. Jonker

BLAINE C. LAFLER,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

       Petitioner, Leonard Hansend, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.       Background

Petitioner provided a summary of the events which led to his conviction as follows:

       Detroit police officer Randarr Coleman testified that he was on street patrol with his partner Carol Harris at approximately 9:15 p.m. on the evening of November 30, 2004. A civilian ride-along was in the backseat of their fully-marked squad car. Officer Coleman observed a motorist in a 1989 Thunderbird disregard a stop sign. As the officer attempted to catch up to that motorist, the front doors of the moving Thunderbird opened and the driver and a front seat passenger got out and ran in opposite directions (T I 24-28, 41). When the driver started firing at the police with a rifle, Officer Coleman put the police car in reverse and started driving backward. He heard bullets hit the squad car, and he identified Defendant Hansend as the person who fired between ten and fifteen shots (T 1 29-31). Officer Coleman put out a description of the shooter on his police radio, and an officer with a tracking dog arrived on the scene. The tracking dog located spent shell casings in the driveway of a home and an M-16 rifle in a backyard, and these items were introduced into evidence (T 132, 36, 38, T II 85). Spots and bullet holes were later found on the squad car; bullets also hit a nearby tree and went through the window of a home. Officer Coleman determined that the Thunderbird was registered to Leonard Hansend (T 141, 45-47).

Officer Coleman's testimony was corroborated by his partner Carol Harris, who did not see who fired the shots, and by Vincent Thomas, the ride-along who happened to be in the squad car that night because he was considering becoming a police officer. Mr. Thomas said that he ducked down in the backseat and thought he heard around 16 shots fired (T 160, 62, 67, 88).

Delayed application for leave to appeal (docket no. 1-2 at pp. 15-16).

On June 22, 2005, a jury convicted petitioner of two counts of assault with intent to commit great bodily harm, M.C.L. § 750.84, and one count of possession of a firearm during the commission of a felony, M.C.L. § 750.227b. Judgment of Sentence (Sept. 9, 2005) (docket no. 11 at p. 25). On September 9, 2005, petitioner was sentenced to concurrent terms of 6 1/2 to 10 years for the assault convictions and a consecutive two years for the firearm conviction. *Id.* Petitioner was given credit for 25 days of time served in jail because he was on parole to the State of California at the time he committed the crime. *See* Sent. Trans. at pp. 25-26 (docket no. 28).

Petitioner did not file a timely appeal of his conviction. Having failed to appeal this matter as of right pursuant to MCR 7.204, petitioner, through counsel, filed a delayed application for leave to appeal pursuant to MCR 7.205(F) raising three issues:

I.    Was [petitioner] denied his Sixth Amendment right to counsel at a critical stage of the proceedings when the court had [petitioner] "tell his side of the story" in a narrative fashion rather than through examination by counsel?

II.   If the court did not err in having [petitioner] testify without the assistance of counsel, did the court deny [petitioner] his constitutional right to represent himself when it declined [petitioner's] pretrial request for unrestricted self-representation?

III.  Was the court's statement that [petitioner] posed a danger to the community an objective and verifiable reason for departure from the sentencing guidelines, and is [petitioner] entitled to a resentencing?

Brief (docket no. 11 at p. 8).

The Michigan Court of Appeals denied the application to take a delayed appeal for lack of merit in the grounds presented. *People v. Hansend*, No. 275068 (Mich. App. June 22, 2007) (docket no. 11 at p. 1). The court did, however, remand the matter to the trial court to complete the "ministerial task" of completing a guidelines departure form. *Id.* Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Hansend*, No. 134519 (Mich. Dec. 5, 2007) (docket no. 12 at p. 1).

Petitioner states that he filed a motion for relief from judgment from the trial court pursuant to MCR 6.500 et. seq. on July 18, 2008, which that court denied on March 18, 2009. *See* Petition at p. 3. The trial court record does not reflect the filing of a motion under MCR 6.500 *et seq. See* Register of Actions (docket no. 9). Rather, the trial court record reflects that petitioner filed a "motion for jail credits" on that date, which trial court denied on March 18, 2009. *Id.* Petitioner's filing is not in the Court record. However, based upon the brief "letter order" of denial, it appears that petitioner disputed his credit for time served in jail prior to trial:

This court is in receipt of your letter inquiring as to the number of jail credit days you are entitled to receive.

Due to the parole status you were under from the state of California at the time of your arrest and subsequent conviction in the state of Michigan, you are eligible for the 25 days awarded at the sentencing and no more.

Letter (March 18, 2009) (docket nos. 1-2 at p. 50 and 7-1).

Petitioner characterized this "letter order" as denying a motion for relief from judgment pursuant to MCR 6.500, and filed a *pro se* delayed application for leave to appeal the order to the Michigan Court of Appeals, raising three issues:

3

> I. Whether [petitioner] was unlawfully deprived [of] his due process, equal protection, and other protected rights under the U.S. and Michigan Constitutions when it failed/refused to grant him the recommended 237 days jail credit at time of sentencing.
>
> II. Whether [petitioner] was denied his constitutional right to effective assistance of trial counsel, where his attorney failed to object to the denial of jail credit for the total amount of days spent in custody.
>
> III. Whether [petitioner] was denied ineffective assistance of appellate counsel for failing to raise the issue now being raised.

Delayed Application (docket no. 13 at p. 8). The Michigan Court of Appeals denied the delayed application for leave to appeal because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Hansend*, No. 292007 (Mich. App. Sept. 24, 2009) (docket no. 13 at p. 1). Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied for the same reason. *People v. Hansend*, No. 139939 (Mich. April 27, 2010) (docket no. 14 at p. 1).

Petitioner subsequently filed the present habeas petition, which raised four claims:

> I. Was [petitioner] denied his Sixth Amendment right to Counsel at a critical stage of the proceeding?
>
> II. Denied Constitutional right to "Self-Representation."
>
> III. Departure from the Sentencing Guidelines.
>
> IV. Was [petitioner] deprived his equal protection, due process, when the court denied him jail credit.

Petition (docket no. 1).

## II. Procedural default

Given the manner in which petitioner's claims were brought in the state court, the issue of procedural default should be addressed briefly. In this case, petitioner did not file a direct

appeal to his conviction and sentence. Rather, petitioner raised Issues I, II and III in a delayed application for leave to appeal to the Michigan Court of Appeals and then raised Issue IV in a post-conviction motion, which the Michigan Court of Appeals construed as a motion for relief from judgment under MCR 6.500 *et seq*. Although petitioner did not file a timely appeal as of right, he raised Issues I, II and III in an application for leave to file a late appeal under MCR 7.205. The Michigan Court did not consider this to be a procedural default, but denied petitioner's application for "lack of merit in the grounds presented."

With respect to Issue IV, the trial court addressed the merits in its short "letter order." Both the Michigan Court of Appeals and the Michigan Supreme Court viewed petitioner's motion as brought pursuant to MCR 6.500 *et seq.*, and denied his applications for leave to appeal because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit previously held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) – i.e., the type of order entered by the Michigan appellate courts this case – "are not explained orders invoking a procedural bar." In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits." *Guilmette*, 624 F.3d at 291. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Id.* Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection'

5

of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.

Here, the last reasoned state opinion was the trial judge's order addressing petitioner's inquiry as to the number of jail credit days he was entitled to receive. Letter Order (March 18, 2009) (docket nos. 1-2 at p. 50 and 7-1). In its "letter order," the trial judge court restated his determination from the sentencing that petitioner was eligible for the 25 days of credit "[d]ue to the parole status you were under from the state of California at the time of your arrest and subsequent conviction in the state of Michigan." *See* Letter Order (March 18, 2009). Based on this order, the trial judge addressed the merits of petitioner's claim with respect to receiving 25 days of jail credit. Accordingly, Issue IV is not procedurally defaulted.

## III. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## IV. Discussion

### A. Sixth Amendment right to counsel at a critical stage (Issue I)

Petitioner contends that his counsel was ineffective for allowing him to take the witness stand and give narrative testimony setting forth his version of events. Petitioner's contention is without merit. At the close of the prosecution's case, and after the trial judge had denied petitioner's motion for a directed verdict, petitioner raised his hand to address the judge, leading to the following exchange between petitioner and the judge:

| | |
|---|---|
| THE COURT: | Mr. Hansend, you had your hand up. |
| [PETITIONER]: | Actually, I guess you have just solved the problem for me. I had actually did not want a directed verdict to be filed in this case, but that's all that I really wanted to state. |
| THE COURT: | All right. Just so that you're aware, Mr. Hansend, the motion made by Mr. Harris, your attorney, was an effort on your behalf to have the case dismissed. |

Trial Trans. (June 21, 2005) at pp. 33-34 (docket no. 26).

After this exchange, petitioner's counsel made a statement on the record regarding petitioner's desire to testify:

I have advised Mr. Hansend that he has a right to remain silent on this matter, that no obligation to say anything at all attaches to him. That it's entirely the prosecution's burden of proof and that he may remain totally silent if he wishes.

I have also advised him that he has a right to testify if he wishes. And I have advised him further in no uncertain terms that it is my considered opinion that if he were to take the stand it would not be helpful to his case.

I have advised him that he ought, in my opinion to exercise his right to remain silent. I do not know what Mr. Hansend's decision is as to whether he's

going to testify or not, but I simply wanted to go on the record as having advised him against such a tactic.

*Id.* at pp. 34-35.

The trial judge advised petitioner that he had a right not to testify, that if he chose to testify he would have to answer questions on cross-examination, and that the choice to testify or not belonged entirely to petitioner. *Id.* at pp. 35-36. Despite these warnings, petitioner stated that he wished to testify at trial. *Id.* at p. 36.

Trial counsel asked petitioner nine questions, establishing a few basic facts such as: petitioner's identity; his age; his residence in Detroit during the relevant time period (November 29th -30th, 2004); that he had contact with a Detroit police car that evening; and that he did not attempt to murder anyone that night. *Id.* at pp. 38-39. On cross-examination, the prosecutor established: that petitioner was driving a Ford Thunderbird that night; that he had just purchased a weapon; that he fired the weapon "[i]n the vicinity of the police officers"; and that he fled the scene because he "was scared." *Id.* at pp. 39-40.

The jury was excused at the close of the cross-examination, at which time the trial judge observed that petitioner indicated that he had something to say. *Id.* at p. 40. When the trial judge asked if petitioner wanted to speak with his counsel before making statements in open court, petitioner declined. *Id.* at p. 41. This led the trial judge to warn petitioner about testifying, stating, "I don't particularly want you to just be blurting things out right now without having the opportunity to as Mr. Harris [petitioner's counsel] about whether or not that's in your best interest to do that." *Id.* In response, petitioner stated, "I had spoke to Mr. Harris already and I am definitely prepared to go forward with my testimony and tell my side of the story." *Id.* When asked what he wanted to bring out, petitioner responded, "I wanted to tell what had taken place, what had become a

situation that could have possibly caused great bodily harm or even death but it was not my intentions to commit such acts to two Detroit police officers." *Id.*

After another break, petitioner's counsel stated that he once again advised petitioner "in no uncertain terms" that "he ought not testify further," but that petitioner "says he wants to." *Id.* at p. 42. Upon questioning by the trial judge, petitioner acknowledged that his counsel had told him that such testimony "could have some damaging consequences." *Id.* at p. 43. Given petitioner's insistence to testify the trial judge allowed him to do so. *Id.*

When petitioner took the stand a second time, the trial judge asked him what additional information he wanted to say to the jury. *Id.* at p. 44. At this time, petitioner engaged in a rather lengthy narrative of the events: that he had just purchased a "rifle style weapon" which he purchased for $140.00; that he had discharged the weapon twice in front of the house where he purchased it; that he ran through a stop sign; that a police car turned around after him; that he jumped out of his moving car; that he grabbed the weapon "not knowing that I would be discharging this weapon in the vicinity of the police officers"; that he did not take into consideration that he could hurt or kill someone when he was running with the weapon; and that it was not his intention to commit murder or great bodily harm when he discharged the weapon in front of the police officers. *Id.* at pp. 44-48.

Upon the government's objection that petitioner's narrative was turning into a closing argument, the trial judge advised petitioner to "talk about the facts." *Id.* at p. 48. Petitioner continued his story, admitting that he discharged the weapon while running but that he did not "stop and aim this weapon with specific intent." *Id.* at p. 49. Petitioner then denied that he shot out any car windows, stating:

10

> I mean if I was attempting to commit an actual murder, I could have easily done so with that high-powered weapon. I mean I fired shots and I was still running when I fired shots. And the car, police car began to back up as I was still running.

*Id.* Petitioner said that he threw down the weapon on the front lawn of a house, even though the record stated that the weapon was retrieved from the backyard. *Id.* at pp. 49-50.

The record reflects that petitioner demanded to testify on his own behalf at trial, contrary to the advice of his trial counsel. Now, petitioner blames his trial counsel for his damaging testimony, claiming that he was denied his Sixth Amendment right to counsel at a critical stage of the proceedings when counsel allowed him to testify.

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel

rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*,

466 U.S. at 689-690.

Petitioner's reference to the lack of counsel at a "critical stage" in the proceedings,

suggests that the appropriate standard of review is under *United States v. Cronic*, 466 U.S. 648

(1984) rather than *Strickland*.

> In *Cronic* . . . the Supreme Court held there are circumstances so likely to
> prejudice the accused that the cost of litigating their effect in a particular case is
> unjustified and prejudice is presumed. The most obvious of these circumstances is
> the complete denial of counsel. Where the defendant is denied counsel at a critical
> stage of his trial, we are required to conclude that a trial is unfair, and an independent
> showing of prejudice is not required.

*Muniz v. Smith*, 647 F.3d 619, 623 (6th Cir. 2011) (internal quotation marks, citations and brackets

omitted).[1]

Here, the Court rejects petitioner's claim that his counsel was ineffective or that he

was denied counsel during a critical stage of his trial. The record reflects that petitioner's counsel

was present during the entire trial. The gist of petitioner's claim is that his counsel allowed him to

testify. Petitioner's claim is specious, given that he disregarded counsel's advice *not* to testify. By

taking the stand, petitioner was exercising his constitutional right to testify. *See Rock v. Arkansas*,

483 U.S. 44-53 (1987) ("[t]he right to testify on one's own behalf at a criminal trial has sources in

several provisions of the Constitution" as one of the rights essential to due process under the

Fourteenth Amendment, the right to call himself as a witness under the Sixth Amendment, and as

"a necessary corollary to the Fifth Amendment's guarantee against compelled testimony"). *United*

---

[1] Petitioner relies on his state appellate brief to support this claim. While petitioner's brief frames
this issue as the denial of counsel at a critical stage, the brief does not cite either *Strickland* or *Cronic*. *See*
Petition (docket no. 1-2 at pp. 20-23). Rather, the thrust of the brief is that the trial judge should not have
allowed petitioner to give narrative testimony.

*States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) ("[t]he right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant"). When a defendant wants to exercise his right to testify, the defense counsel's role is to advise the defendant on whether the defendant should take the stand. *Webber*, 208 F.3d at 551. However, "the ultimate decision to testify rests with the defendant." *Id.* Thus, "[a] defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *Id.*

Here, defense counsel advised petitioner not to testify. The trial judge repeatedly warned petitioner about the possible damage that could occur from taking the stand. Nevertheless, petitioner disregarded both counsel's advice and the trial judge's warning, and insisted on giving his own narrative testimony to, in his words, "tell my side of the story" in a narrative directed to the jury. Defense counsel discharged his duty by advising petitioner not to testify. *Id.* Petitioner has not established that counsel was ineffective or that he was deprived of counsel during a critical stage of the proceedings. He has simply shown that he insisted on testifying (as was his right), despite repeated good advice to the contrary, and now he regrets the consequences of his own mistake. Accordingly, petitioner's claim should be denied.

### B.    Petitioner's right to self-representation (Issue II)

Having blamed his counsel for allowing him to testify at trial, petitioner simultaneously claims that he did not need counsel and that the trial court violated his Sixth Amendment rights by refusing his request to represent himself.

Under the Sixth and Fourteenth Amendments, a defendant has a federal constitutional right "to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The defendant must be "made aware of the dangers and disadvantages

13

of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id.* at 835, 95 S.Ct. 2525 (citation omitted). The right of self-representation is not absolute. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (no right of self-representation on direct appeal); *McKaskle v. Wiggins*, 465 U.S. 168, 178–79, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (appointment of standby counsel over defendant's objection is permissible). It also is not "license to abuse the dignity of the courtroom" or "not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525.

*Blunt v. Woods*, 505 Fed. Appx. 569, 571 (6th Cir. 2012).

"A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." *Akins v. Easterling*, 648 F.3d 380, 395 (6th Cir. 2011).

A defendant's assertion of his right to self-representation is analyzed as a waiver of the right to counsel. The waiver must be knowing, voluntary, and intelligent, and must be done with sufficient awareness of the relevant circumstances. In other words, the record should establish that [the defendant] knows what he is doing and his choice is made with eyes open. [I]t is the [petitioner's] burden to prove that he did not competently and intelligently waive his right to the assistance of counsel.

*Id.* (internal quotation marks and citations omitted). "While the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004) (internal citations and quotation marks omitted).

Here, petitioner asked to represent himself on various occasions prior to the trial. At a pre-trial conference held on January 21, 2005, petitioner stated that he wanted to dismiss his counsel for an unspecified "conflict of interest" and to represent himself. Trans. at p. 7 (Jan. 21, 2005) (docket no. 18). Petitioner stated that he "read up on a lot of cases," that he felt that he was responsible to be in charge of his own case because, among other things, he had a GED and attended

two years of college. *Id.* at p. 8. The trial judge cautioned petitioner that he was charged with an offense which could send him to prison for the rest of his life and that he "need[s] to think about the idea that there are some people who have greater training and greater skill than we have in a number of things." *Id.* at p. 9.

At a hearing on January 25, 2005, petitioner's counsel asked for a forensic referral for petitioner due to "a serious issue of competency." Trans. at p. 3 (Jan. 27, 2005) (docket no. 19). The trial judge agreed to refer petitioner for examinations on both competency and criminal responsibility. *Id.* At that time, petitioner re-iterated that he planned to represent himself at trial and that he was ready to start the trial as scheduled on March 17, 2005. *Id.* at pp. 4-6. Petitioner also stated his legal opinion that the trial judge was violating his due process because the judge and was making decisions over his life. *Id.* at pp. 6-7.

At a hearing held on March 17, 2005, the trial judge found that petitioner was competent to stand trial, was aware of his status as a defendant in a criminal case, and would be able to rationally assist in his own defense if he so chose. Trans. at p. 4 (March 17, 2005) (docket no. 20). The judge further stated that petitioner was "well aware of the roles of the parties in this particular case" and found that petitioner was competent to stand trial. *Id.* After the trial judge found petitioner competent to stand trial, defense counsel advised the judge that petitioner wanted to represent himself. *Id.* at p. 5. The trial judge had an extensive discussion with petitioner with respect to petitioner's requests to obtain evidence from the police and the prosecutor. *Id.* at pp. 6-16.

At a final conference held on April 29, 2005, petitioner appeared with counsel. Trans. (April 29, 2005) (docket no. 21). Petitioner was represented by his counsel at that time. *Id.*

Nevertheless, petitioner stated, among other things, that he filed his own motion to dismiss because, according to petitioner, the Detroit Police Department "basically framed me." *Id.* at p. 13.

At the first day of trial, petitioner brought up a number of matters, including his desire to call character witnesses with regard to his truthfulness, his claim that the prosecutor was engaged in "malicious prosecution," and that he did not have sufficient time "to either test or have some type of expert witness" check out "what's actually on" the in-car police camera video involved in his case. Trial Trans. (June 8, 2005) at pp. 5-9 (docket no. 22). In response to petitioner's last claim, the trial judge pointed out that petitioner's statement that he "barely" saw the videotape was "absolutely false" and that the tape was not damaging evidence against petitioner because it was "difficult to see whose [sic] on the tape." *Id.* at p. 9.

During the course of this conversation, the trial judge stated:

. . . I know that you very much want to represent yourself.

But given the fact that you are facing the possibility of going to prison for the rest of your life, and given the types of Motions that you have articulated and things your [sic] requested, it would be irresponsible for me to let someone with your misguided notion of how the law is to represent yourself. It would be equivalent to letting you walk off a cliff blind-folded.

*Id.* at p. 6.

The judge continued:

You, Mr. Hansend, have wanted from day one to represent yourself because you believe that you know better than anyone else how to conduct your own case.

And time after time, you have taken what can only charitably be viewed as self-destructive decisions. I have told you before and I will repeat it again. You have a very fine lawyer in Mr. Harris.

\*      \*      \*

16

And just so the record is complete, and I know Mr. Hansend, you have told us repeatedly about the fact that you are concerned that this is your life on the line and I am concerned about that too. And that is precisely why you will be represented by a lawyer rather than yourself.

*Id.* at pp. 10-11.

The trial judge's statements are tantamount to finding that petitioner was not able to comply with the relevant rules and substantive laws related to his criminal prosecution. While petitioner was mentally competent to stand trial, the record supports the trial judge's finding that petitioner did not know what he was doing with respect to representing himself at trial. His admission alone, during the testimony he insisted upon giving, coupled with the bullet holes in the police car, were sufficient to establish the elements necessary for his conviction. In summary, petitioner's attempt to waive his Sixth Amendment right to counsel was certainly neither knowing nor intelligent, although it may have been something he wanted to do. *See Tovar*, 541 U.S. at 87-88. Perhaps when a defendant's judgment evidences a pitiful lack of understanding of the law, he should still be allowed to waive his right to counsel, but it would render the 'knowing' and 'intelligent' aspects of the test essentially meaningless. Accordingly, petitioner's claim should be denied.

### C. Petitioner's sentence calculation (Issue III)

In Issue III, petitioner contends that the trial court departed from the state's sentencing guidelines. *See* Petition (docket no. 1 at p. 9); Attachment to petition (docket no. 1-2 at pp. 27-29). Specifically, petitioner contends that the trial court's statement that he posed a danger to the community was not an "objective and verifiable" reason for departing from Michigan's sentencing guidelines and that he is entitled to a re-sentencing. *Id.* At sentencing, the government stated that given petitioner's criminal record and the present conviction for assault with intent to commit great bodily harm less than murder, his sentencing guideline computation of 29 to 57 months

17

was wholly inadequate.  Sent. Trans. at pp. 21-22 (docket no. 28).  The trial judge agreed that the sentencing guidelines did not reflect the seriousness of the danger petitioner posed to the community, including his juvenile record, fighting with authorities, being disruptive at the juvenile detention facility, the brutal assault and stabbing of a 13-year-old girl in San Diego, California, and the present case which the judge summarized as follows:

> The defendant got out of a vehicle after a traffic stop with what can best be described as a war rifle and opened up and fired innumerable rounds at police officers, who are just trying to do their business in enforcing traffic violation, and that was in my view a very ruthless effort to hurt these police officers.

*Id.* at pp. 18-19, 23-25.  For these reasons, the trial judge sentenced petitioner to a period of 6 1/2 to 10 years (78 to 120 months).  *Id.* at pp. 25-26.

Petitioner fails to state a federal constitutional issue with respect to the trial judge's alleged abuse of discretion in departing from the guidelines.  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of State law."  *Id.* at 67, quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  The state's computation of petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review.  *See Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68.  *See also Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is issue of state law not cognizable in federal habeas review); *Braun v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts can not review a state's alleged failure to adhere to its own sentencing procedures").

Petitioner's claim related to the trial judge's interpretation of Michigan's sentencing guidelines is not cognizable on federal habeas review.

### D. Sentencing credits related to California parole (Issue IV)

In Issue IV, petitioner contends that the trial court improperly calculated his jail credit for time served. At sentencing, the prosecutor pointed out that petitioner was paroled from the State of California on November 21, 2003, that he was on parole when he committed the offense in Michigan in November, 2004, and that he was released from the California parole on August 15, 2005. Sent. Trans. at pp. 6-7 (docket no. 28). Based on this timeline, petitioner had been released from the California parole 25 days prior to his September 9, 2005 sentencing in Michigan. At sentencing, the trial judge took this into account, stating that "[s]ince the defendant was on parole to the State of California, he will get credit for 25 days spent in custody." *Id.* at pp. 25-26. Petitioner claims that he is entitled to jail credit for 237 days spent in jail from November 30, 2004 through September 9, 2005. Petitioner's Brief (docket no. 13 at pp. 11-13).[2]

Petitioner relies on *People v. Seiders*, 262 Mich. App. 702, 686 N.W.2d 821 (2004), for the proposition that he was entitled to credit for the time served in jail. As a general rule, "[w]hen a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense, and he is not entitled to credit for time served in jail on the sentence for the new offense" and that "[a] parolee who is arrested for a new offense and is incarcerated on a parole detainer serves jail time on the paroled offense." *Seiders*, 262 Mich. App. at 705, 707. Petitioner contends that the general rule does not apply to him because a parole detainer was never

---

[2] For purposes of resolving this issue, the Court will refer to petitioner's arguments as set forth in Issue I of his motion for relief from judgment. *See* Petitioner's Brief (docket no. 1-2 at pp.64-67).

placed on his record. Petitioner's Brief (docket no. 13 at pp. 11-13). Furthermore, petitioner points out that he should receive time served because he could not post bond, which was set at $250,000.00. *Id. See Seiders*, 262 Mich. App. at 705-06 ("[o]ne who serves time in jail before sentencing for denial of bond or inability to post bond is entitled to receive credit for that time served in jail before sentencing"). While petitioner's brief refer includes cryptic references to "unlawful deprivation of liberty barred by the US Const Amend V; US Const, Amend IX; and US Const Amend XIV," and "[t]he Double Jeopardy Clause of the United states and Michigan Constitutions," he does not address how the state court's calculation of his sentence violated any federal constitutional provision.

As with the sentencing guidelines, petitioner's claim with respect to jail credit is a matter of state law not cognizable on federal habeas review. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only"); *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991) ("[b]ecause application of presentence jail time to a subsequent sentence is legislative grace and not a constitutional guarantee, the interpretation of state crediting statutes is a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction") (internal quotation marks, citations and brackets omitted). Accordingly, petitioner's claim with respect to the trial judge's calculation of credit for time served is not cognizable on federal habeas review.

## V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  August 30, 2013                          /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).